IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 JUN -6 PM 5: 03

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| UNION PLANTERS BANK, N.A., | ) |
| Plaintiff, | ) |
| v. | ) No. 02-2321 Ma |
| CONTINENTAL CASUALTY CO., NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA., ST. PAUL MERCURY INSURANCE CO., and TWIN CITY FIRE INSURANCE CO., | ) |
| Defendants. | ) |

ORDER ON POST-JUDGMENT MOTIONS

On August 25, 2004, this court entered an order granting summary judgment to Plaintiff Union Planters Bank, N.A. ("UP") against Defendant Continental Casualty Co. ("Continental") and granting summary judgment to the remaining Defendants National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), St. Paul Mercury Insurance Company ("St. Paul"), and Twin City Fire Insurance Company ("Twin City")(collectively "excess carriers"). On August 26, 2004, a judgment was entered dismissing the case. On September 8, 2004, UP moved 1) to alter or amend the judgment under Fed. R. Civ. P. 59 or, alternatively, for relief under Fed. R. Civ. P. 60 and 2) to certify state law issues in accordance with Tennessee Supreme Court Rule 23. On the same day, Continental also

moved to alter, amend, or clarify the judgment. Continental and the excess carriers filed responses to UP's motion on September 27, 2004, to which UP replied on October 14, 2004. UP filed a response to Continental's motion on September 24, 2004, to which Continental replied on October 6, 2004.

In support of its motion to alter or amend, UP noticed the filing of several exhibits on September 9, 2004. On September 27, 2004, the excess carriers filed objections and a motion to strike this evidence, to which UP responded on October 12, 2004. Because UP offers this evidence for the court to consider in deciding its motion, the court will decide the motion to strike first.

## I. Excess Carriers' Motion to Strike

In support of its motion to alter or amend the judgment, UP has filed various post-judgment exhibits, including the affidavit of Douglas R. Miller, transcripts of oral depositions of George H. Blume, Andrew Doherty, Stacy Parker, and David Lynders, and interrogatory answers by Defendants National Union and Twin City. The excess carriers argue that the introduction of this evidence after judgment has been rendered violates Local Rule 7.2(d), which requires evidence in support of or in response to a motion for summary judgment to be submitted with the accompanying memoranda. In particular, the excess carriers contend that UP failed to include evidence establishing either the amount of its loss or the amount of professional fees and expenses incurred and that UP

2

should now be prohibited from introducing such evidence.

It is not accurate to characterize UP's submissions as new evidence. Most of its exhibits consist of evidence of damages cited previously in the record of this case. The only submissions that could be characterized as new facts relate to the calculation of the amount of damages and accrued interest. This issue is well within the scope of a motion under Rule 59 when summary judgment has already been granted to the plaintiff. Further, the court will not penalize UP for failing to provide detailed calculations of damages when the primary issue for summary judgment was the various defendants' overall liability under the insurance policies. Thus, the court DENIES the excess carriers' motion to strike post-judgment evidence and OVERRULES their objections to that evidence.

## II. UP's Motion to Alter or Amend

UP contends that the court erred in dismissing the case, that the judgment does not dispose of its claim for pre-judgment interest, that the judgment does not dispose of its separate claim under the Financial Institutions Solutions Policy ("the Policy") for professional fees and expenses, and that the court should reverse its judgment in favor of the excess carriers on the issue of liability, or alternatively, certify that issue to the Tennessee Supreme Court.

### A. Dismissal of the Suit

UP claims that the court erred in entering the August 26, 2004

judgment dismissing the action. The court's order on the previous day had in fact granted UP's motion for summary judgment against Defendant Continental. Fed. R. Civ. P. 60(b) permits a court to relieve a party from a final judgment arising from mistake or inadvertence. Because the court's order on August 25, 2004, granted UP's motion for summary judgment against one defendant, the subsequent judgment dismissing the entire action was clearly in error, resulting from mistake or inadvertence.[1] Therefore, the court GRANTS UP's motion to amend and VACATES the portion of the judgment dismissing the action against Continental.

**B. Prejudgment Interest and Policy Limits[2]**

UP claims that it is entitled to pre-judgment interest in excess of the limits contained in the Policy. Continental disputes this claim and argues that UP has submitted other claims under the Policy unrelated to the instant litigation, which have eroded the Policy's $25 million liability limit. These arguments are distinct: whether and to what extant UP is entitled to prejudgment interest on judgment proceeds is a separate issue from whether the underlying proceeds should be reduced in light of other payments under the Policy.

---

[1] Continental agrees that the judgment should be amended to reflect the prior order granting UP summary judgment against Continental. (See Continental Resp. at 3, n. 4.)

[2] The issues raised here are the same issues Continental raises in its own motion to alter the judgment. Thus, the court will address both motions in this section.

4

## 1. Prejudgment Interest

Continental argues that the language of the Policy specifically excludes an award of prejudgment interest and that Tennessee law precludes prejudgment interest that exceeds the aggregate liability limit of a fidelity bond. A Tennessee court may award prejudgment interest as an element of damages "as permitted by the statutory and common laws of the state as of April 1, 1979 ... in accordance with the principles of equity." Tenn. Code Ann. § 47-14-123.[3]  "An award of prejudgment interest is within the sound discretion of the trial court." Myint v. Allstate Insurance Co., 970 S.W.2d 920, 927 (Tenn. 1998)(internal citations omitted).

The Policy defines "loss" as "loss of funds or Property owned by Union Planters Corporation Insureds, but not loss of use of funds or Property;..." (Policy § E.23.) Continental claims that prejudgment interest is awarded to compensate a plaintiff for "loss of use" of the judgment proceeds and that the Policy, therefore, precludes its assessment in this case. The purpose of the definition is to limit the scope of the Policy's coverage, not to limit the court's discretion in awarding interest after coverage has been determined.

In Bank of Huntingdon v. Smothers, the Tennessee Court of

---

[3] The court has previously held that Tennessee law applies to this diversity action. (See Order, August 24, 2004.)

Appeals interpreted a similar clause in a dispute over the scope of coverage of a fidelity bond. 626 S.W.2d 267 (Tenn. Ct. App. 1981). The policy in question excluded liability for "potential income ... not realized by the insured because of a loss covered under this bond." Id. at 268. The court held that this clause limited a "loss" under the policy to interest that had in fact accrued on outstanding loans and excluded interest that would eventually be due but had not accrued when the loss was reported.[4] Id. at 270-71. This finding did not, however, preclude the court from assessing prejudgment interest on the amount it had determined to be covered by the policy. Id. at 271. A similar conclusion is suggested in this case. That the policy itself does not cover potentially profitable uses of lost funds (including interest-bearing investments) does not preclude the court from assessing prejudgment interest on what it deems to be covered losses.

Continental also argues that Tenn. Code Ann. § 25-1-102, as construed by the Tennessee Supreme Court, precludes the assessment of prejudgment interest in excess of the Policy's aggregate coverage limit. That provision reads as follows:

**Stipulated Penalties; bonds (officers and fiduciaries) or agreements**

---

[4] The court cited a hypothetical situation in which the insured bank received a $2,000 note payable in one year, in exchange for a $1,800 loan to a borrower. If six months had passed since the note was issued, the court would assess the bank's loss at $1,900, although the bank eventually would have received $2,000. The court would then assess interest on the $1,900 from the date of the claim until the date of the judgment. Id. at 270-71.

> In actions brought on bonds or agreements for the payment of money, or with collateral conditions, and recovery had by the plaintiff, the judgment shall be entered for the stipulated penalty, to be discharged by the payment of principal and the interest due thereon, or the damages assessed by the jury, and execution shall issue accordingly.

In 1928, the Tennessee Supreme Court stated that "[u]nder this section of the Code, the judgment upon a bond with collateral conditions cannot exceed the stipulated penalty. The sureties are only bound to this extent, and interest is allowed only after judgment and upon the judgment." People's Bank & Trust Co. v. United States Fidelity & Guaranty Co., 517 S.W.2d 163, 164 (Tenn. 1928). A fidelity bond, such as those at issue in this case, was explicitly held to be "a bond with collateral conditions," and the claimant was barred from receiving prejudgment interest. Id. This ruling has been further applied to bar prejudgment interest on a liability insurance claim. See Tennessee Farmers Mutual Insurance Co. v. Cherry, 374 S.W.2d 371, 372 (Tenn. 1964)(distinguishing general liability insurance policies from life, fire, and accident insurance policies, which would bear interest from the time they became due).

Although more recent decisions cast doubt on this line of cases, it has never been explicitly overruled. The Tennessee Court of Appeals has assessed prejudgment interest on facts very similar to those in this case, but neither party to that decision raised the present issue of the scope and application of the decisions

7

interpreting Tenn. Code Ann. § 25-1-102. See Bank of Huntingdon, 626 S.W.2d at 271. Additionally, the fidelity bond here is similar to the general liability and fidelity policies that have been specifically held not to bear prejudgment interest, as opposed to "single-occurrence" policies that become due at a discrete point in time and have been held to bear interest from that date.[5] See Tennessee Farmers Mutual Insurance Co., 374 S.W.2d at 372; Genesco, Inc. v. Liberty Mutual Insurance Co., 235 F. Supp. 363, 365 (M.D. Tenn. 1964)(recognizing this distinction).

Given the court's discretion in this area and because the applicable Tennessee authority suggests that prejudgment interest is not allowed, the court will not award prejudgment interest on the Policy proceeds.

### 2. The Policy's Coverage Limit

The aggregate limit for coverage of the instant claims under the Policy is $25 million. (Policy Declarations, Item 6 (Coverage Schedule)). UP claims that it sustained a loss of $24,983,371 covered by Section E.I.3(a) of the Policy and incurred expenses in determining this loss of $199,688.76, covered under Section E.7 of the Policy. Continental does not appear to dispute these

---

[5] The Tennessee authority cited by UP deals with these kinds of single-occurrence policies. See Myint, 970 S.W.2d 920 (Tenn. 1998)(homeowners' insurance, fire loss); Stooksbury v. American National Property and Casualty Co., 126 S.W.3d 505 (Tenn. Ct. App. 2003)(homeowners' insurance, fire loss); Farmers Mutual of Tennessee v. Athens Insurance Agency, 2004 WL 343597 (Tenn. Ct. App. 2004)(homeowners' insurance, fire loss).

8

assertions,[6] but it asserts that it has already paid $11,968,411 under the Policy for claims unrelated to this litigation. Continental argues that, given the aggregate limit of $25 million, any judgment awarded to UP should be reduced by that amount. UP agrees with Continental's claim as to the erosion of the policy limits and the amount of that erosion. (See Resp. to Continental's Mot. to Alter at 1.)

Assuming its evidence of damages is adopted, UP is entitled to a judgment of $25 million, minus the amount Continental has already paid under the Policy.[7] It is undisputed that, as of August 31, 2004, Continental had paid $11,968,411 on UP's behalf. Continental claimed on that date that defense costs would "continue to erode" the policy limit, suggesting that the current amount paid by Continental to date is greater. (Continental Mot. to Alter ¶ 5.) The parties are, therefore, directed to submit, within thirty (30) days of the entry of this order, precise calculations, along with supporting documentation, of 1) the most current sum of payments made under the Policy to UP or on UP's behalf and 2) the proper rate to be used to calculate post-judgment interest on UP's damages award. The parties are further permitted to submit, within thirty

---

[6] Continental actually disputes that it gave prior approval, as required by the policy terms, to the $199,688.97 that UP claims as professional fees and expenses. Because those claims are also subject to the $25 million coverage limit, a decision about whether those claims are covered under the Policy will not affect UP's recovery.

[7] UP's claimed losses exceed the $25 million liability ceiling. Continental does not appear to challenge those claims.

(30) days, any other evidence or argument relevant to the calculation of damages as outlined in this order.

### C. Notice to the Excess Carriers

In its summary judgment order, the court decided that UP was not entitled to recover from the excess carriers because it had failed to comply with the notice provisions in the applicable insurance policies. In reaching that conclusion, the court specifically held that the policies did not fit within the recognized exception to the more general rule prohibiting recovery where the claimant has failed to give timely notice. (See Order, August 24, 2004, at 24.) UP requests that the court reconsider that ruling under Fed. R. Civ. P. 59, or alternatively, certify the issue to the Tennessee Supreme Court under Tenn. S. Ct. Rule 23, § 1. Certification is proper if "there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Id.

UP argues that the court's order mistakenly characterizes the disputed agreements as "claims-made" insurance policies and that the court erred in finding that Alcazar v. Hayes, 982 S.W.2d 845 (Tenn. 1998) does not apply to this case.[8] Alcazar reversed a long

---

[8] Even if a court were to decide that the Alcazar rule applied here, there have been no findings on the issue of actual prejudice to the excess carriers. Thus, even if the court reconsidered its prior order, it is not apparent that a resolution by the Tennessee Supreme Court would be "determinative of the cause."

line of Tennessee cases holding that a failure to give timely notice of an insurance claim could bar a claimant's right to collect. The court held, instead, that a plaintiff can collect under certain insurance agreements by proving that the insurer was not prejudiced by the lack of notice. Id. at 856. As explained in the court's prior order, integral to the Alcazar holding was the finding that the insurance policy "is a contract of adhesion, i.e., not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance." Id. at 851-52 (internal citations omitted).

Subsequent Tennessee decisions have recognized this factor in Alcazar, as well as that court's invocation of the more general policy in favor of compensating tort victims. See American Justice Insurance Reciprocal v. Hutchison, 15 S.W.3d 811, 816 (Tenn. 2000). Although it did not expressly invoke the absence of these factors, the Tennessee Court of Appeals declined to extend the Alcazar rule to claims-made insurance policies. Pope v. Leuty & Heath, PLLC, 87 S.W.3d 89, 94-95 (Tenn. Ct. App. 2002). As explained in the summary judgment order, the Tennessee Supreme Court would likely agree that the notice provisions in claims-made policies should be more strictly construed against the insured than those in occurrence-based policies, because the former are specifically

negotiated. See <u>Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.</u>, 174 F.3d 653, 658-59 (5th Cir. 1999).

UP is correct that the insurance agreements in question are not "claims-made" policies in the strict sense of third-party liability insurance.[9] They are first-person fidelity bonds, and to the extent that the court characterized them as third-party insurance, that characterization was incorrect. The factors that weigh against application of the <u>Alcazar</u> rule to traditional claims-made insurance, however, weigh just as heavily in this case. The Policy states explicitly that "Coverage Part E (Bankers Blanket Bond) applies to claims reported during the Policy Period or Extended Reporting Period, if applicable." (Policy Terms & Conditions at 12.) This language clearly indicates that the Policy and, therefore, the excess policies apply to claims actually made during the coverage period, not claims that arise from occurrences during that period.

More importantly, the policies in question cannot reasonably be characterized as contracts of adhesion. UP and the excess carriers are large and sophisticated entities with ample opportunity to bargain for desired contractual provisions. Unlike

---

[9] The excess policies generally provide coverage according to the underlying terms of the Policy. Section E of the Policy (Bankers Blanket Bond) is included within the same coverage limit ($25 million) as other sections of the Policy, which appear to constitute traditional liability insurance. For purposes of these motions, the court accepts UP's representation that Section E is a separate and distinct agreement from the other sections of the Policy and that the excess policies, to the extent that they provide coverage for claims arising under Section E, should also be categorized as fidelity bonds.

12

those in standard occurrence-based policies, the notice provisions here are the result of "mutual negotiation and concession." Alcazar, 982 S.W.2d at 851. A Tennessee court would, therefore, be unlikely to excuse UP from fulfilling an express condition that was negotiated at arms' length by parties of equal sophistication and bargaining power.

The excess carriers cite authority that directly addresses the issue of notice on fidelity bonds. That authority also weighs against excusing UP from the notice provisions. The Tennessee Supreme Court has expressly held that an employer's failure to comply with the notice requirement of an employee fidelity bond relieves the insurer from liability under that bond. King's, Inc. v. Maryland Casualty Co., 88 S.W.2d 456, 458 (Tenn. 1935). That holding has not been overruled. See World Secret Service Association, Inc. v. Travelers Indemnity Co., 396 S.W.2d 848, 853-54 (Tenn. Ct. App. 1965); Griffith Motors, Inc. v. Compass Insurance Co., 676 S.W.2d 555, 557-58 (Tenn. Ct. App. 1983). Although these decisions precede Alcazar, as explained above, the Alcazar rule is unlikely to be extended to the present facts.

UP has not demonstrated that the order on summary judgment was based on a clear error of law or will result in manifest injustice. Therefore, the court will not alter the prior judgment in favor of the excess carriers. See GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). Similarly, given the applicable

13

case law and the unlikelihood of expanding the <u>Alcazar</u> rule to these facts, it cannot be said that there is "no controlling precedent" from the Tennessee Supreme Court on the issue at hand. Thus, it is unnecessary to certify the issue of notice to the Tennessee Supreme Court.

### III. Continental's Motion to Alter or Amend

Continental argues that UP's judgment should be confined to the $25 million liability limit and that UP should not receive prejudgment interest on that award. Those arguments have been resolved by the court's analysis of UP's motion. UP's recovery will be no greater than $25 million, and UP will not receive prejudgment interest on the award.

### IV. Conclusion

For the foregoing reasons, the court DENIES the excess carriers' motion to strike post-judgment evidence and OVERRULES their objections to that evidence. The portion of the prior judgment dismissing the case against Continental is VACATED; UP's recovery will be limited to no more than $25 million less other payments under the relevant portions of the Policy, UP will not be awarded prejudgment interest, and both parties are instructed to submit evidence of damages in accordance with this order. UP's motion to alter or amend the judgment in favor of the excess carriers, or alternatively, to certify the issue of notice to the Tennessee Supreme Court, is DENIED.

So ORDERED this \_\_6th\_\_ day of June 2005.

/s/ S.H.M.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 188 in case 2:02-CV-02321 was distributed by fax, mail, or direct printing on June 9, 2005 to the parties listed.

---

Michael Keeley
STRASBURGER & PRICE, LLP
901 Main St.
Ste. 4300
Dallas, TX 75202

H. Frederick Humbracht
BOULT CUMMINGS CONNERS & BERRY
414 Union St.
Ste. 1600
Nashville, TN 37219

Michael W. Higginbotham
FEDEX CORPORATION- Hacks Cross
3620 Hacks Cross Rd.
Third Floor, Building B.
Memphis, TN 38125--880

John R. Riddle
STRASBURGER & PRICE, LLP
901 Main St.
Ste. 4300
Dallas, TX 75202

Toni Scott Reed
STRASBURGER & PRICE, LLP
901 Main St.
Ste. 4300
Dallas, TX 75202

Douglas A. Black
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

John M. Gillum
MANIER & HEROD
150 4th Avenue North
Ste. 2200
Nashville, TN 37219--249

Jeffrey S. Price
MANIER & HEROD
150 4th Avenue North
Ste. 2200
Nashville, TN 37219--249

Sam H. Poteet
MANIER & HEROD
150 4th Avenue North
Ste. 2200
Nashville, TN 37219--249

Joseph T. Getz
LESS GETZ & LIPMAN
100 Peabody Place
Ste. 1000
Memphis, TN 38103

Thomas R. Dyer
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Michael G. McLaren
BLACK MCLAREN JONES & RYLAND
530 Oak Court Dr.
Ste. 310
Memphis, TN 38117

Honorable Samuel Mays
US DISTRICT COURT